ELADIO PLAZA GONZÁLEZ, Petitioner, v. INDUSTRIAL COMMISSION OF PUERTO RICO, ETC., Respondent.

No. CI-65-5.     Decided January 31, 1967.

*Víctor Tirado Saltares* for petitioner. *Donald R. Dexter, Milagros Muñoz Bou, Gilberto Cobián Aparicio,* and *Jorge Márquez González* for the Manager of the State Insurance Fund.

Second Division composed of Mr. Justice Belaval, as Chief Judge of Division, Mr. Justice Hernández Matos, Mr. Justice Santana Becerra, and Mr. Justice Dávila.

MR. JUSTICE HERNÁNDEZ MATOS delivered the opinion of the Court.

In this petition to review a decision of the Industrial Commission, we are concerned with the question of whether the determination and evaluation, made by the Manager of the State Insurance Fund, of the visual disability, partial and permanent, suffered by the laborer, Eladio Plaza González, conform to certain provisions of the Workmen's Accident Compensation Act of 1935, in force at the time of the labor accident which originated the action.

We shall set forth, in the first place, those legal provisions, and, in the second place, the facts and surrounding circumstances.

The corresponding statute, as it stood amended on February 29, 1964, insofar as pertinent, provided:

"PERMANENT PARTIAL DISABILITY

"3. Permanent partial disability shall be considered to be the loss of one foot or leg, one hand, one arm, one *eye,* one or more fingers or toes, and any ankylosis, fracture, or dislocation when ligaments have been torn and where restoration is not complete.

For permanent partial disabilities specified below, the injured workman or employee shall receive additional compensation *consisting of sixty-six and two-thirds (66 2/3) per cent of the wages which were received* or, but for such accident, would have been received *by him on the day of the accident, for the number of weeks* specified in the following table; Provided, That in no case shall there be paid to the workman or employee more than thirty-five (35) dollars, or less than eight (8) dollars a week. And provided, further, that in no case shall a sum greater than six thousand (6,000) dollars be paid." Section 3, subd. 3, first paragraph.

.        .        .        .        .        .        .        .

"Permanent visual disabilities shall be. determined and evaluated by the Manager of the State Insurance Fund on the expert report of an oculist; Provided, That partial disabilities shall be determined according to the percentage of the total disability that they represent, taking into consideration the industrial vision efficiency of both eyes and applying therefor the factors one and three for the worse and the better eye, respectively; And provided, further, That *ten (10) per cent total permanent disability shall be compensated for the loss of the eyeball by enucleation, evisceration, or extreme atrophy, in addition to the visual disability resulting therefrom.*

"*The complete and permanent functional loss of any member, which affects the industrial capacity* of the workman or his earning capacity, *shall be considered as a total loss of said member as if it had been amputated.*" Section 3, subd. 3, third paragraph. (Italics ours.)

Let us turn to the facts.

The abovementioned agricultural laborer, Eladio Plaza González, 65 years old, worked on February 29, 1964, on a farm in the ward Garzas of Adjuntas, devoted to the cultivation of citron, property of Heirs of Vidal Rivera Feliciano. On that day, while he was lifting a citron plant to prune it, "a branch from another plant which was entangled sprang out and hit him on his right eye."

The case was reported to the State Insurance Fund. On the following March 2, the laborer was given first aid at

the Ponce Dispensary. Dr. Fiol Bigas referred him to the Ophthalmic Institute for examination and report. From the "discharge sheet of the eye specialist," it appears that he was examined by Dr. Guillermo Fernández on April 22, 1964 and that his injury was a "Penetrating wound of the cornea and crystalline lens with complete traumatic cataract, right eye." It was recommended in the same sheet: "The traumatic cataract of the right eye, resulting from his accident of February 29, 1964, should be submitted to surgical extraction, and we recommend the hospitalization of the injured."

After receiving the maximum medical treatment, Drs. Fernández, on September 2, 1964 practiced a final examination on the laborer and found that he showed the following conditions: "Surgical aphakia and artificial coloboma of the iris and small scar of a penetrating wound of the cornea nasal side, right eye." Aphakia is the absence of the crystalline lens. Coloboma is a fissure or notch in the iris.

The expert opinion of those two distinguished eye specialists fixed the following *permanent* partial visual disability to the laborer, as a result of the accident: *"Loss of the industrial vision of the* right *eye* which is equivalent to twenty-five percent (25%) of *total permanent disability."*

On the basis of such opinion, on October 8, 1964, the Manager of the State Insurance Fund determined and evaluated the permanent partial visual disability on that 25% and ordered:

". . . that he be paid in whole and in one single payment an additional compensation equal to 60% of the wage he was earning the day of the accident, which shall not be less than $6 nor more than $22 a week for a period of 112½ weeks, which amounts to the sum of $945."

The laborer appealed from that order before the Industrial Commission, expressing his disagreement and requesting that his disability be increased.

On May 18, 1965, a medical hearing was held before the Industrial Commission, at which the laborer appeared and Drs. Calcagno, for the State Insurance Fund, and Vázquez Millán, Director of the Medical Division of the said Industrial Commission. The laborer testified that he could not see anything with his right eye. The doctors present therein had examined that eye before that hearing. After setting forth the record of the case, Dr. Vázquez Millán testified:

"As of today we believe that the disability fixed is fair and reasonable, since this is what the Compensation Act grants in these cases."

The chairman of said Industrial Commission expressed himself as follows at the close of the hearing:

"The Workmen's Compensation Act does not contemplate a greater disability for the loss of your right eye since the disability granted is the maximum fixed by law. *We know that it is true that you do not see anything with your right eye,* however, the law has already given you the maximum disability that can be given. Therefore we cannot do anything more for you." (Italics ours.)

The Industrial Commission entered an order on May 24, 1965, affirming the decision of the Manager of the State Insurance Fund. It denied a petition for reconsideration on the following July 29.

The laborer appealed to us. Because he lacked counsel we appointed the Legal Aid Society to give petitioner the necessary professional aid to perfect the petition and then we issued writ to review the Commission's Order. Mr. Víctor Tirado Saltares, in representation of the Legal Aid Society, filed an interesting memorandum on the merits of the petition. The attorney of the Manager of the State Insurance Fund has not answered said brief. After having filed a motion to dismiss, by all means frivolous, in this serious petition he has assumed the Olympian position of submitting it "on the documents which appear in the record thereof and espe-

cially the content of the Order of the Industrial Commission of May 24, 1965." Appellant-laborer assigns the commission of the following errors:

"*First Error*: The percentage of permanent partial disability which the manager of the State Insurance Fund fixed to the laborer and which was affirmed by the Industrial Commission is erroneous.

"*Second Error*: The Manager of the State Insurance Fund used an erroneous formula to compute the compensation to which the laborer was entitled.

"*Third Error*: The Industrial Commission committed error in not granting the laborer the 10% of additional disability fixed by law there being sufficient evidence in the record showing the extreme atrophy of the injured eye."

I—We believe that the first error assigned was not committed. The disability fixed as "loss of the industrial vision of the right eye which is equivalent to twenty-five percent (25%) of permanent total disability" for the work is supported by the following physicians, who in a manner more or less intense, examined or treated the laborer: Dr. J. Fiol Bigas, Dr. G. Fernández, Dr. R. Fernández, Dr. Mario Calcagno, Dr. R. Vázquez Millán, and Dr. Andrés Montalvo Carroll, the latter consultant ophthalmologist of the Commission. There was unanimity among them in fixing the percent of the visual disability. Against those six expert physicians we have nothing to show or suggest that they were wrong in prejudice of the injured laborer.

■ II—In our opinion the second error assigned was committed. Appellant maintains that the compensation should have been computed on the basis of 66 2/3% of the daily wage of $2.80 he was earning on the day of the accident, and not on the basis of 60% of such wage as computed by the Manager. He is right. According to the legal provisions above-copied at pages 887 and 888, for permanent partial disabilities—the loss of an eye is one of them

—"the injured workman or employee shall receive additional compensation consisting of sixty-six and two-thirds (66 2/3) percent of the wages which were received . . . by him on the day of the accident, for the number of weeks specified in the following table. . . ."

Therefore, in order to evaluate the principal compensation to be paid to the laborer, the computation should have been made on the basis of 66 2/3% of the wage of $2.80 he was receiving on the day of the accident, and not on 60% of that wage.[1] At this rate, each one of the five working days of every week is compensated—according to the definition of "week and day" of § 3 of said Act—at $1.68. At the rate of 66 2/3% at $1.8666. The difference of eighteen and two-thirds cents per day would not have been received by the laborer as a result of the erroneous computation.

■ III—The third error assigned was also committed. By operation of the provision of the Act which we have copied above, in this case in which, according to the opinion of several eye specialists, the laborer suffered the complete functional and permanent loss of his right eye, which unquestionably affects his industrial capacity and his earning capacity in 25%, as determined by the Manager and accepted by the Industrial Commission, he was entitled to receive another ten percent (10%) of permanent total disability in addition to the resulting visual disability. In other words, in that situation equivalent to an amputation of the eye, of the maximum of 450 weeks fixed by said § 3, subd. 4,

[1] That percent has been changed progressively. Act No. 45 of 1935, originally fixed it at 50%; it was raised to 60% by Act No. 94 of 1957 and, finally, it was fixed at 66⅔% by Act No. 101 of 1960, which became effective on June 25 of that year. The same has happened with the maximum number of weeks for compensation and the maximum amounts to be paid. However, notwithstanding that the amendment made by Act No. 115 of 1953 defined the week as consisting of six working days, by Act No. 101 of 1960 the working week was reduced to five days, which alters notably the computation of the final compensation in prejudice of the workers.

paragraph 5, compensation for another 45 weeks[2] should have been granted also, in addition to the 112 1/2 weeks which corresponded to the 25% of the visual disability resulting from the accident.

■ With this the maximum of compensable weeks is raised to 157 1/2, which amounts to 787.50 working days, which paid at $1.8666 per day, yield a total compensation of $1,469.95.

Between the simple compensation of $945 fixed by the Manager—for 562.50 days at $1.68 per day—and the one now indicated of $1,469.95, there is the substantial difference of $524.95.

For the reasons stated, the order of the Industrial Commission of May 24, 1965 and the decision of the Manager of the State Insurance Fund of October 8, 1964 should be modified in the sense of increasing to $1,469.95 the amount of the final compensation to be received by the laborer, Eladio Plaza González, as a result of the labor accident which he suffered on February 29, 1964, and thus modified, they should be affirmed.

---

[2] This additional compensation was not originally provided by law. It was granted ɒy the amendment introduced by Act No. 284 of May 15, 1945. Since then the 10% of permanent total disability in addition to the resulting one has not been altered.